IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 9, 2019

## STATE OF TENNESSEE v. MARTINESS HENDERSON

**Appeal from the Criminal Court for Shelby County**
**No. 15-00211      Paula L. Skahan, Judge**

_____

### No. W2018-02015-CCA-R3-CD

_____

A Shelby County jury convicted the juvenile defendant, Martiness Henderson, of first degree murder committed during the perpetration of a robbery. After conviction, the trial court immediately imposed a life sentence which the defendant now challenges as unconstitutional. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Claiborne Ferguson, Memphis, Tennessee, for the appellant, Martiness Henderson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Sam Winnig, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On January 13, 2015, a Shelby County grand jury indicted the defendant and his two co-defendants, Brandon Vance and Walter Collins, for the first degree murder of Larry Wilkins committed during the perpetration of a robbery. Tenn. Code Ann. § 39-13-202 (a)(2). The defendant was seventeen years old at the time of the murder. He proceeded to trial independently, a jury convicted him as charged, and the trial court imposed an automatic life sentence. *State v. Martiness Henderson*, No. W2016-00911-CCA-R3-CD, 2018 WL 1100972, at *1, 3 (Tenn. Crim. App. Feb. 26, 2018). The defendant appealed, arguing the jury selection process was improper and his sentence

violated the constitutions of both the United States and the State of Tennessee. *Id.* at *3-7. Upon our review, this Court concluded the trial court committed reversible error during jury selection and remanded the case for a new trial. *Id.* The State presented the following facts upon remand.

On the evening of March 9, 2014, the defendant and his co-defendants reviewed Craigslist for potential cars to steal and chose a black 2006 Ford Mustang with white racing stripes owned by the victim. The defendants contacted the victim and met him at the Sycamore Lake Apartments in Shelby County, Tennessee. Before meeting the victim in the parking lot of the apartment complex, the defendant got out of Mr. Vance's gold 1999 Monte Carlo and waited out of sight. Mr. Vance and Mr. Collins parked the Monte Carlo, met the victim, and test-drove the Mustang. When they returned from the test-drive, Mr. Vance and Mr. Collins continued to feign interest in buying the Mustang. As Mr. Vance, Mr. Collins, and the victim looked under the hood, the defendant approached and fired multiple shots at the victim. The defendant and his co-defendants then fled the scene in the Mustang.

The victim's fiancée, Dionne Lee, woke to the sound of "five, or six gunshots" on March 9, 2014. She went outside and found the victim "laying (sic) in the parking lot" but she did not see his Mustang. Instead, she saw "a car that I had never seen before, it was parked, kind of like, in two spaces, which was not normal and the windows were down." The police arrived and reviewed the victim's telephone, finding messages about the defendants' interest in viewing the Mustang. Ms. Lee confirmed the victim was trying to sell the Mustang on Facebook and Craigslist. She identified photographs of the Sycamore Lake Apartments, the gold 1999 Monte Carlo parked in the complex, and the victim's Mustang.

Lekevva Allen, Frederick Moss, and Corrie O'Bryant lived at the Sycamore Lake Apartments on the night of the victim's murder. Ms. Allen heard three or four gunshots, looked out her window, and saw "three or four figures" in the parking lot near the victim's Mustang. She "saw a young man fall and [] saw them run." Mr. Moss and Ms. O'Bryant were driving through the apartment complex around midnight and saw three black men looking under the hood of a Mustang. Mr. Moss heard "four or five, what I thought was (sic) firecracker shots" and later saw the police enter the apartment complex. Ms. O'Bryant heard "five gunshots, maybe" after parking her car.[1] She went inside her apartment and later saw the victim on the ground and noticed his Mustang was gone.

---

[1] Because Ms. O'Bryant was unavailable for trial, portions of her testimony from a prior proceeding were read into the record.

Several officers with the Memphis Police Department participated in the investigation of the victim's murder. Officer Michael Huff responded to the scene after hearing "about five to six shots" while preparing for his shift at the Appling Farms Station precinct. He quickly learned shots had been fired at the Sycamore Lake Apartments and a man was "down." When Officer Huff arrived on the scene, he saw the unresponsive victim on the ground. Ms. Lee told Officer Huff the victim was trying to sell his Mustang on Craigslist, and it was no longer in the parking lot. Officer Huff broadcasted the vehicle's information and secured the scene. James T. Smith, a crime scene investigator, photographed the scene and collected evidence from it, including four spent shell casings and a flashlight. The State entered photographs depicting the scene along with the four spent shell casings and the flashlight into evidence.

Lieutenant Reginald Titus also responded to the Sycamore Lake Apartments and found the victim "DOA," or dead on arrival.[2] He set up surveillance on the 1999 Monte Carlo left in the parking lot, "waiting to see if someone would return to the vehicle," but no one did. When Lieutenant James Sewell arrived on the scene the morning of March 10, 2014, he learned officers had been watching the 1999 Monte Carlo because "it had been abandoned and people that lived in the apartment complex had never seen it before."[3] He noted the Monte Carlo "had been constantly watched by other officers," but no one approached the vehicle. Lieutenant Sewell obtained a search warrant for the Monte Carlo which rendered the following items: a drive-out tag issued to Mr. Vance for a 1999 Monte Carlo, a ticket issued to Mr. Collins for improper state registration, a vehicle tow slip, an Auto's and More magazine with vehicles circled throughout the pages, and a walkie-talkie. Photographs depicting Mr. Vance's driver's license, learner's permit, and debit card were also entered into evidence. Lieutenant Sewell did not find any property belonging to the defendant in the Monte Carlo.

While on patrol the morning of March 10, 2014, Officer James E. Johnson "saw a black Mustang, with a white stripe coming down, which was described earlier that day as having been taken in a homicide." The Mustang turned "really fast" into the Annie Townhomes, and Officer Johnson pursued. When he found the Mustang in the complex, it "was stopped, the doors were opened[,] and there was nobody around." Edward Cunningham was installing an electrical meter at the Annie Townhomes when he saw a black Mustang with "a silver streak, or something" and two young, black males "running through the parking lot." Mr. Cunningham told Officer Johnson that he saw two males running from the vehicle but he was unable to identify the men. After confirming the

---

[2] At the time of the victim's murder, Lieutenant Titus served as a sergeant in the felony response bureau.

[3] Lieutenant Sewell served as a sergeant in the homicide bureau during his investigation into the victim's murder.

Mustang belonged to the victim, Officer Michael Coburn processed it for fingerprints. The State entered the print cards and the following stipulation into evidence:

> A 2006 Ford Mustang belonging to [the victim] was recovered by the Memphis Police Department and was processed by Crime Scene Officer, Michael Coburn. Officer Michael Coburn processed this vehicle for fingerprints using black powder. Fingerprint technician, James Hill, processed the fingerprints from this vehicle from the top of the front bumper, on the left side of the vehicle, belong to Brandon Vance, date of birth, July 23, 1992. Brandon Vance is the same Brandon Vance charged in indictment number 15-00211. Fingerprint technician, James Hill, processed the fingerprints from this vehicle from the outside driver's door that matched three ink fingerprint impressions belonging to Martiness Henderson, date of birth 5/20/1996. Martiness Henderson is the same Martiness Henderson charged in indictment 15-0211 in trial in Criminal Court, Division I, on the week of August 13, 2018.

On March 11, 2014, the defendant voluntarily arrived at the police station with his mother and gave a statement to Sergeant Kevin Lundy detailing his participation in the victim's murder.[4] Though he initially denied any involvement, the defendant ultimately admitted to shooting the victim as they attempted to steal his Mustang. The defendants set up the plan by calling the victim through a "Wi-Fi App" that created an untraceable telephone number. The defendant stated, Mr. Vance and Mr. Collins "were suppose[d] to just talk to [the victim] and I was going to come around the corner and tell him to move away from the car." Instead, the defendant "up'd the gun at the dude, panicked, and shot him," firing "more than [two]" gunshots. The defendant, Mr. Vance, and Mr. Collins immediately fled the scene in the victim's Mustang, and the defendant threw the gun into the river. The following day, the defendants were driving the Mustang around the Annie Townhomes when they saw the police. The men "got out the car and ran."

Dr. Marco Ross, an expert in forensic pathology, performed the autopsy of the victim and detailed the injuries the victim sustained in the shooting. Specifically, the victim suffered a total of six gunshot wounds to the left arm, the right elbow, the right thigh, and the lower, mid, and upper back. As a result, he suffered injuries to the lungs, the aorta, the thoracic spine, the left kidney, the spleen, the diaphragm, the ribs, and the "soft tissue in the right thigh, including the right femur." Dr. Ross opined the victim died

---

[4] According to Sergeant Lundy, the defendant's mother was present during the interview in accordance with standard police policy. However, as the interview progressed, she became upset and left the interview room. Sergeant Lundy continued the interview, noting the defendant had been advised of his rights. A copy of the defendant's statement and a signed advice of rights form were entered into evidence.

of multiple gunshot wounds and the manner of death was homicide. Photographs taken during the autopsy and the autopsy and toxicology reports were entered into evidence.

The State then rested its case, and the defendant moved for a judgment of acquittal which was denied by the trial court. The jury convicted the defendant of first degree murder committed in the perpetration of a robbery, and the trial court imposed a life sentence by operation of law. The trial court subsequently denied the defendant's motion for a new trial, and this timely appeal followed.

*Analysis*

On appeal, the defendant argues the trial court's imposition of a life sentence is unconstitutional. The defendant asserts the life sentence, "as applied to juvenile offenders, violates prohibitions against cruel and unusual punishment pursuant to the Eighth Amendment of the United States Constitution and Article I, Section 16 of the Tennessee Constitution." The State contends this Court previously rejected the defendant's argument on direct appeal and as such, the law of the case doctrine precludes us from revisiting it again. Upon our review of the record, the arguments of the parties, and the applicable law, we agree with the State.

As noted, the defendant presently seeks review of the trial court's imposition of a life sentence after a jury convicted him of first degree murder. Our current review of the defendant's sentence, however, arises after the defendant appealed his original conviction for first degree murder. *Martiness Henderson*, 2018 WL 1100972, at *3-7. In that appeal, the defendant argued the jury selection process during his first trial was improper and his resulting life sentence was unconstitutional. This Court vacated his initial conviction for first degree murder and remanded the case to the trial court for a new trial based upon the impropriety of the jury selection process. *Id.* In doing so, we also reviewed the constitutionality of the defendant's life sentence:

> The [defendant] contends that his automatic life sentence is unconstitutional because it equates to a sentence of life without parole and, therefore, violates *Miller v. Alabama*, S. Ct. 2455, 2469 (2012). The State argues that the [defendant's] sentence does not violate *Miller*. We agree that the sentence does not violate *Miller*.

> In *Miller*, the United States Supreme Court held that a mandatory sentence of life without the possibility of parole for a juvenile offender violates the United States Constitution's Eighth Amendment prohibition against cruel and unusual punishment. *Id.* at 2464. However, this [C]ourt has repeatedly rejected the argument that a juvenile's mandatory life

- 5 -

sentence, which requires fifty-one years before release, is effectively a sentence of life without the possibility of parole and, therefore, violates *Miller*. *State v. Zachary Everett Davis*, No. M2016-01579-CCA-R3-CD, 2017 WL 6329868, at \*25 (Tenn. Crim. App. at Nashville, Dec. 11, 2017), *perm. app.* [*denied*, (Tenn. Mar. 14, 2018) (not for citation)]; *State v. Jonathan Gutierrez*, No. M2015-01235-CCA-R3-CD, 2017 WL 2274644, at \*15 (Tenn. Crim. App. at Nashville, May 24, 2017), *perm. app. denied*, (Tenn. Sept. 21, 2017); *Martez D. Matthews v. State*, No. M2015-02422-CCA-R3-PC, 2016 WL 7395674, at \*4 (Tenn. Crim. App. at Nashville, Dec. 21, 2016); *Charles Everett Lowe-Kelley v. State*, No. M2015-00138-CCA-R3-PC, 2016 WL 742180, at \*8 (Tenn. Crim. App. at Nashville, Feb. 24, 2016), *perm. app. denied*, (Tenn. June 23, 2016); *Cyntoia Denise Brown v. State*, No. M2013-00825-CCA-R3-PC, 2014 WL 5780718, at \*21 (Tenn. Crim. App. at Nashville, Nov. 6, 2014), *perm. app. denied*, (Tenn. May 15, 2015). As the concurring opinion in *Zachary Everett Davis* recently explained, though:

> [A]lthough Tennessee's sentencing scheme allows for possible release of a defendant convicted of first degree murder after the service of fifty-one years, it is only in the rare instance, if ever, that a juvenile so sentenced would be released back into society. Even if the judge or jury decides that the features of the juvenile or the circumstances of the homicide require a sentence other than life without parole, the effect of the sentence is still the same. The juvenile has no meaningful opportunity for release whether you name the sentence imprisonment for life or imprisonment for life without the possibility of parole, and the juvenile will likely die in prison. "While the logical next step may be to extend protection to these types of sentences, that is not the precedent which now exists" in this State.

No. M2016-01579-CCA-R3-CD, 2017 WL 6329868 at \*26 (Thomas, J., concurring) (quoting [*Floyd Lee Perry, Jr., v. State*, No. W2013-00901-CCA-R3-PC, 2014 WL 1377579, at \*4 (Tenn. Crim. App. Apr. 7, 2014), *perm. app. denied*, (Tenn. Sept. 18, 2014)]. Despite our concerns about mandatory life sentences for juveniles in Tennessee, we feel bound by the precedent from this court on the subject. *See id.* The [defendant] received a sentence of life with the possibility of parole. Therefore, he is not entitled to relief.

*Martiness Henderson*, 2018 WL 1100972, at *6-7.

Upon remand, a jury again convicted the defendant of first degree murder and the trial court imposed a sentence of life with the possibility of parole by operation of law. Tenn. Code Ann. § 39-13-202 (c). As we explained above, the defendant's life sentence does not reach the constitutional considerations of *Miller*, and the law surrounding the imposition of a life sentence for first degree murder is not in question. *Id.* "Under the doctrine of the law of the case, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case, which must be followed upon remand by the trial court and by an appellate court on a second appeal." *State v. Carter*, 114 S.W.3d 895, 902 (Tenn. 2003) (citing *State v. Jefferson*, 31 S.W.3d 558, 561 (Tenn. 2000) (internal citations omitted). Accordingly, this Court is bound by our previous determination that the defendant's life sentence is constitutional and the defendant is not entitled to relief.[5] *Martiness Henderson*, 2018 WL 1100972, at *6-7.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE

---

[5] While we recognize previously determined issues can be reconsidered in this setting, we conclude none of the exceptions apply to the defendant's case. *Carter*, 114 S.W.3d at 902 ("However, an issue decided in a prior appeal may be reconsidered if: (1) the evidence offered at the hearing on remand was substantially different from the evidence at the first proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law occurring between the first and second appeal.").